```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-15-13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DIANA DESSOURCES,

                              Plaintiff,                  12 Civ. 8105 (PKC)

          -against-                              MEMORANDUM
                                                          AND ORDER

AMERICAN CONFERENCE INSTITUTE,
KENNETH HORTON, individually, and JOHN
DOES 1-10, and ABC CORPS. 1-10, fictitious
names for persons or entities whose present
roles and identifies are unknown,

                              Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        This is an employment discrimination action by plaintiff against her former employer. Plaintiff, who alleges that she was terminated because her mother had terminal cancer, asserts claims against her former employer and her former supervisor, as well as unnamed defendants, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the New York City Human Rights Law, N.Y. City Admin. Code § 8–101 et seq. Defendants move to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed. R. Civ. P. Because plaintiff fails to allege plausibly that she was terminated because of her mother's illness, defendants' motion is granted.

BACKGROUND

        The following facts are taken from the complaint and are assumed to be true for the purpose deciding defendants' motion to dismiss. All reasonable inferences are drawn in favor of plaintiff, the non-movant.

Defendant American Conference Institute ("ACI") is in the business of producing educational programs and seminars, including Continuing Legal Education programs for attorneys. (Compl. ¶ 5.) ACI hired plaintiff on or about March 16, 2011, as a Conference Producer. (Id. ¶ 15.) During plaintiff's employment at ACI, she was supervised by defendant Kenneth Horton, an ACI Division Manager. (Id. ¶¶ 6, 7.)

Plaintiff timely completed the first two conferences of three assigned to her at ACI; the complaint states that she "produced great conferences." (Id. ¶ 23.) Specifically, the first conference had more in-house attorneys as speakers than ever before, allegedly an indication of its successes because in-house attorneys tend to attract other attorneys to conferences. (Id. ¶¶ 24, 25.) Plaintiff's co-workers praised the first conference, stating that it was "likely to be the best of its kind," and ACI Managing Director Benjamin Greenzweig "individually spoke to Ms. Dessources to single her out for praise." (Id. ¶¶ 28, 29.) At the time of her termination, plaintiff was in the process of organizing the third conference and had booked in-house counsel from one of the country's most recognized business entities to be a speaker. (Id. ¶ 26.)

During plaintiff's employment at ACI, her mother suffered from cancer. (Id. ¶ 31.) This fact was known to ACI and specifically to plaintiff's supervisor, Horton, who authorized certain days off for plaintiff to visit and care for her mother. (Id. ¶ 32.) Horton "repeatedly asked Ms. Dessources about the condition of her mother." (Id. ¶ 33.) The complaint alleges that "[t]he reason for this repeated questioning . . . was not out of a genuine concern for her health, but rather, stemmed from irritation that Ms. Dessources was spending time with her ailing mother." (Id. ¶ 34.) Plaintiff alleges that her work performance was not hampered by her occasional absences and that, even when out of the office, she remained in contact via phone and e-mail. (Id. ¶¶ 35, 36.)

On or about August 1, 2011, ACI terminated plaintiff, citing "poor performance." (Id. ¶¶ 17, 18.)

DISCUSSION

I. Pleading Standards

Following the Supreme Court's decisions in Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002), Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Second Circuit has noted "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit." Hedges v. Town of Madison, 456 Fed. App'x 22, 23 (2d Cir. 2012) (summary order); see also Schwab v. Smalls, 435 Fed. App'x 37, 40 (2d Cir. 2011) (summary order) (noting that "[q]uestions have been raised . . . as to Swierkiewicz's continued viability in light of Twombly and Iqbal," but not deciding the issue). Nonetheless, certain principles can be discerned.

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In assessing a complaint, courts draw all reasonable inferences in favor of the non-movant. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam). Legal conclusions, however, are not entitled to any presumption of truth. Iqbal, 556 U.S. at 678. Instead, the court must examine the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

Although "an employment discrimination plaintiff need not plead a prima facie case of discrimination," Swierkiewicz, 534 U.S. at 515, she must satisfy the standards set out in Twombly and Iqbal. See Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the

3

pleading standard for all civil actions and it applies to antitrust and discrimination suits alike." (citation and quotation marks omitted)); Twombly, 550 U.S. at 569 (noting that plausibility analysis does not require pleading a prima facie case and therefore does not run counter to Swierkiewicz); cf. Hedges, 456 Fed. App'x at 23 (noting, without deciding, that "Swierkiewicz's reliance on Conley suggests that, at a minimum, employment discrimination claims must meet the standard of pleading set forth in Twombly and Iqbal, even if pleading a prima facie case is not required").

## II. The Complaint Does Not Plausibly Allege A Claim Against Any Defendant Under The ADA

The ADA establishes a general rule that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Prohibited discrimination under the ADA includes so-called associational discrimination: "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association . . . ." 42 U.S.C. § 12112(b)(4).

The Second Circuit has not had occasion to construe the associational discrimination provision of the ADA. However, relying on the Tenth Circuit's decision in Den Hartog v. Wasatch Acad., 129 F.3d 1076 (10th Cir. 1997), courts in this District have held that a prima facie case of associational discrimination under the ADA consists of the following:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action;
> (2) the plaintiff was subjected to adverse employment action;

4

> (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability;
> (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

Id. at 1085; see Moscarello v. Malcolm Pirnie, Inc., 06 Civ. 5250 (WWE), 2008 WL 6192101, at *4 (S.D.N.Y. Feb. 17, 2008); Tabachnik v. Jewish Theological Seminary of Am., 03 Civ. 2759 (HB), 2004 WL 414826, at *4 (S.D.N.Y. Mar. 4, 2004); Abdel-Khalek v. Ernst & Young, L.L.P., 97 Civ. 4514 (JGK), 1999 WL 190790, at *4 (S.D.N.Y. Apr. 7, 1999).

Beyond Den Hartog, many courts have drawn guidance from the Seventh Circuit's decision in Larimer v. Int'l Bus. Machines Corp., 370 F.3d 698, 700 (7th Cir. 2004). There, Judge Posner, elaborating on the fourth element of Ben Hartog's prima facie case, identified three types of situations falling within the "rarely litigated" associational discrimination provision of the ADA: "expense," "disability by association," and "distraction."

> They can be illustrated as follows: an employee is fired (or suffers some other adverse personnel action) because (1) ("expense") his spouse has a disability that is costly to the employer because the spouse is covered by the company's health plan; (2a) ("disability by association") the employee's homosexual companion is infected with HIV and the employer fears that the employee may also have become infected, through sexual contact with the companion; (2b) (another example of disability by association) one of the employee's blood relatives has a disabling ailment that has a genetic component and the employee is likely to develop the disability as well (maybe the relative is an identical twin); (3) ("distraction") the employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention, yet not so inattentive that to perform to his employer's satisfaction he would need an accommodation, perhaps by being allowed to work shorter hours.

Larimer, 370 F.3d at 700. Several courts of appeals have cited this three-type framework with approval, see Stansberry v. Air Wisconsin Airlines Corp., 651 F.3d 482, 487 (6th Cir. 2011);

Erdman v. Nationwide Ins. Co., 582 F.3d 500, 511 n.7 (3d Cir. 2009); Trujillo v. PacifiCorp, 524 F.3d 1149, 1155-57 (10th Cir. 2008), and district courts in this Circuit have looked to it for guidance, see Marchioli v. Garland Co., Inc., 11 Civ. 124 (MAD), 2011 WL 1983350, at *6 (N.D.N.Y. May 20, 2011); Darcy v. City of New York, 06 Civ. 2246 (RJD), 2011 WL 841375, at *5 (E.D.N.Y. Mar. 8, 2011).  As noted, plaintiff need not plead a prima facie case to survive a motion to dismiss.  Nonetheless, in the absence of Second Circuit authority, Den Hartog and Larimer provide guidance on the elements of an associational discrimination claim under the ADA.  Accord Sommersett v. City of New York, 09 Civ. 5916 (LTS), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011) ("Although Plaintiff need not allege facts sufficient to make out a prima facie case for any of her discrimination claims in her Complaint, the elements thereof provide an outline of what is necessary to render her claims for relief plausible.").

The first two types identified in Larimer—"expense" and "disability by association"—are inapplicable here because there is no indication in the complaint that defendant was financially responsible for plaintiff's mother's healthcare or that the mother's condition was hereditary or communicable.  Instead, plaintiff appears to advance the "distraction" theory.  Plaintiff alleges that Horton "authorized certain days off for Ms. Dessources to visit and care for her mother" and that he "repeatedly asked Ms. Dessources about the condition of her mother" out of "irritation that Ms. Dessources was spending time with her ailing mother."  (Compl. ¶¶ 32-34.)  Plaintiff further alleges that, because she "met or exceeded ACI's relevant expectations," the proffered reason for her termination—"poor performance"—must have been "pretextual."  (Id. ¶¶ 18, 19, 22.)[1]

---

[1] For the purposes of discussion, the Court assumes, without deciding, that plaintiff's mother's terminal cancer constituted a disability under the ADA.  Compare Katz v. Adecco USA, Inc., 845 F. Supp. 2d 539, 548 (S.D.N.Y.

Defendants argue that the complaint fails to plausibly allege that plaintiff was terminated "because of" her association with a person with a disability. Plaintiff responds that "[t]wo facts stand out as rendering Plaintiff's claim more than mere speculation – namely: (a) the close timing between management learning of Plaintiff's association with her cancer-stricken mother and Plaintiff's termination; and (b) the fact that Defendant Horton, out of 'irritation' with the time Plaintiff took off from work, pressured Plaintiff by 'repeatedly' questioning Plaintiff about the condition of her mother." (Pl. Br. 5.) Neither of plaintiff's arguments is availing.

The complaint states that "[t]he real reason motivating ACI's decision to terminate Ms. Dessources is evident from the events transpiring <u>at the time</u>," but the complaint gives no indication of the timing of relevant events. (Compl. ¶ 30 (emphasis added).) Plaintiff was hired on March 16, 2011 and terminated on August 1, 2011, approximately five months later. (<u>Id.</u> ¶¶ 15, 17.) The complaint states that "Ms. Dessources['] mother was suffering from cancer" but gives no indication of when she was diagnosed or when plaintiff first brought the diagnosis to her employer's attention. (<u>Id.</u> ¶ 31.) The complaint also fails to indicate the timing of plaintiff's requests for days off, or the frequency and timing of Horton's "repeated[]" questioning, in relation to plaintiff's termination. (<u>Id.</u> ¶¶ 32, 33.) Judging from the complaint, it is conceivable that plaintiff's mother's illness spanned the entirety of plaintiff's employment at ACI, and, indeed, may have been known at the time plaintiff was hired; nothing more specific is alleged. While these deficiencies, each standing in isolation, would not necessarily be fatal to

---

2012) ("Cancer will 'virtually always' be a qualifying disability." (citing 29 C.F.R. § 1630.2(j)(3)(ii)-(iii) (2011)), <u>with</u> <u>Thomsen v. Stantec, Inc.</u>, 785 F. Supp. 2d 20, 23 (W.D.N.Y. 2011) (holding, in case applying law in effect before 2008 amendments to ADA, that bowel cancer with "discrete, temporary and brief periods of impairment" did not qualify as a disability under ADA ), <u>aff'd</u>, 483 Fed. App'x 620 (2d Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 931 (2013).

plaintiff's claim, plaintiff's failure to plead a plausible chain of events leads to the conclusion that plaintiff has not adequately stated a claim for relief.[2]

As to plaintiff's second argument, the key allegation in the complaint is as follows: "The reason for [Horton's] repeated questioning, however, was not out of a genuine concern for [plaintiff's mother's] health, but rather, stemmed from irritation that Ms. Dessources was spending time with her ailing mother." (Id. ¶ 34.) Although couched as a factual allegation, paragraph 34 merely states the conclusion, without supporting facts, that Horton's questioning was motivated by his irritation with plaintiff's absences. "But when it comes to language, context is key." Williams v. Time Warner Inc., 440 Fed. App'x 7, 9 (2d Cir. 2011) (summary order) (holding complaint failed "to plausibly suggest" that a supervisor's use of "the phrase 'up in his face' had racial overtones when it was said" such that it would indicate a racial motivation for plaintiff's termination). Stripped of plaintiff's editorial comment, the allegation that "Mr. Horton repeatedly asked Ms. Dessources about the condition of her mother" is ambiguous. (Id. ¶ 33.) "How's your mother?" could indicate genuine concern or it could indicate irritation (or both, or neither, or something else entirely, depending on context). Plaintiff posits, without any supporting facts, that Horton's questioning was motivated by his irritation with plaintiff's absences, and asks the Court to draw the additional inference—again, without any factual allegations to support it—that defendants terminated plaintiff because of plaintiff's mother's disability. There is no basis in the complaint for the Court to draw such an inference.

---

[2] Regarding timing, the complaint also alleges that "ACI could not realistically have concluded that Ms. Dessources was a poor performer, who deserved to be fired, after just a few months of employment." (Compl. ¶ 20.) The Court rejects the conclusory assertion that ACI could not have assessed plaintiff's performance over the course of five months, during which time plaintiff completed two conferences.

The teachings of Twombly and Iqbal are helpful. In Twombly, the Court observed that the alleged parallel conduct by competitors was as consistent with legal, independent action as it was with an illegal agreement in restraint of trade. See Twombly, 550 U.S. at 556-57. And, in Iqbal, the Court held that "bare assertions" regarding what defendants knew and intended were conclusions not entitled to the assumption of truth. Iqbal, 556 U.S. at 680-81. Here, the allegation that Horton repeatedly asked plaintiff about her mother is as consistent (if not more consistent) with genuine concern as it is will illegal discrimination. Moreover, even if plaintiff's conclusory allegation that Horton was irritated were taken at face value, plaintiff makes no attempt to bridge the substantial distance between irritation and discriminatory animus. To "nudge[] [her] claims across the line from conceivable to plausible," Twombly, 550 U.S. at 570, plaintiff was required plead "factual matter," id. at 556, giving rise to the inference that defendants terminated plaintiff "because of" plaintiff's mother's illness. The necessary inference might be established, for example, by pleading a close temporal nexus between revelation of the disability and plaintiff's termination, or by pleading statements by supervisors from which discriminatory animus could fairly be inferred, but the complaint here does not plead such facts. Even after Swierkiewicz, the Second Circuit has held that such a pleading is inadequate. See Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam) ("Plaintiff's Complaint does not . . . set forth any factual circumstances from which a gender-based motivation for such an [adverse] action might be inferred. It does not, for instance, allege that Clark (or any of the other defendants) made any remarks that could be viewed as reflecting discriminatory animus. Nor does it allege that any male employees were given preferential treatment when compared to Plaintiff." (citations and footnotes omitted)).

In short, a supervisor, aware that an employee's mother is ill, who inquires, even repeatedly, as to the mother's condition does not subject the employer to liability based only upon the conclusory allegation that the supervisor's inquiries "stemmed from irritation that [the employee] was spending time with her ailing mother." (Compl. ¶ 34.) To hold otherwise would only serve to coarsen the all too impersonal workplace by inducing employers to place in company manuals or training videos a warning to never inquire as to a coworker's ailing family member.[3]

### III. Plaintiff Will Not Be Granted Leave To Amend

Rule 15 states that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2), Fed. R. Civ. P. Here, defendants raised their grounds for dismissal in a pre-motion letter to the Court. (Dk. No. 6.) Following a pre-motion conference, the Court issued an Order stating as follows: "At the conference, plaintiff was offered the opportunity to file an amended complaint to address issues to be raised in defendant's proposed motion to dismiss. Plaintiff elects to stand on her existing pleading which decision will be taken into account on the issue of whether there is any basis to further amend at a later juncture." (Dk. No. 7.) Consistent with plaintiff's position at the conference, plaintiff has not, in opposing the motion, sought leave to amend the complaint.

---

[3] Notably, plaintiff does not assert a claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. The FMLA prohibits an employer from interfering with an employee's exercise of rights under the Act by, for example, terminating the employee. 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c). See, e.g., Moscarello, 2008 WL 6192101, at *4-6 (granting summary judgment to defendant on plaintiff's associational discrimination claim under the ADA but denying summary judgment as to plaintiff's FMLA claim where jury could find that plaintiff was terminated upon expressing need to take time off to care for wife suffering from cancer).

IV. The Court Declines To Exercise Supplemental Jurisdiction
    <u>Over Plaintiff's State-Law Claims</u>

Jurisdiction over plaintiff's state-law claims is premised on 28 U.S.C. § 1367(a). A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). The Second Circuit has made clear that the Court's discretion "is not boundless." <u>Valencia ex rel. Franco v. Lee</u>, 316 F.3d 299, 305 (2d Cir. 2003). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity—the 'Cohill factors.'" <u>Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.</u>, 464 F.3d 255, 262 (2d Cir. 2006) (citing <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Cohill</u>, 484 U.S. at 350 n.7.

Because plaintiff's federal claims are herein dismissed and none of the <u>Cohill</u> factors supports exercising supplemental jurisdiction over the remaining state-law claims, plaintiff's sate-law claims are dismissed without prejudice.

CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Dk. No. 8) is GRANTED. Plaintiff's state-law claims are dismissed without prejudice. The Clerk is directed to enter judgment for defendants.

SO ORDERED.

                                              P. Kevin Castel
                                              United States District Judge

Dated:  New York, New York
           May 14, 2013